## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE/OPELOUSAS DIVISION

**DEBORAH A. THOMPSON**                    **CIVIL ACTION NO. 10-120**

**VERSUS**                                 **JUDGE DOHERTY**

**MICHAEL ASTRUE,**                        **MAGISTRATE JUDGE HANNA**
**COMMISSIONER OF SOCIAL**
**SECURITY**

### *REPORT AND RECOMMENDATION*

Before the court is an appeal of the Commissioner's finding of non-disability.
Considering the administrative record, the briefs of the parties, and the applicable law, it
is recommended that the Commissioner's decision be **AFFIRMED** and this matter be
**DISMISSED**.

### *Background and the Commissioner's Findings*

Deborah A. Thompson filed applications for disability insurance benefits and
supplemental security income on January 15, 2004, alleging a disability onset date of
January 1, 2003. (R 11, 56, 195).  In her application, Thompson alleged she was disabled
due to a neck injury. (R 59).  Thompson was born on August 8, 1963, and was 39 years
old on her alleged disability date.  (R 201).  She had a ninth grade education.  (R 12). She
was 41 years old on the date of the first hearing before the ALJ on June 6, 2005, and the
first Decision on June 22, 2005.  (R 12, 19).   After the first hearing, the ALJ found
Thompson not disabled. (R 19).  Thompson appealed the denial and this Court remanded

with instructions that its remand order "includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to assess the effect of claimant's taking Lortab three times a day on her ability to work." (R 205). The Appeals Council remanded the case to the ALJ for rehearing. (R 218). The same ALJ, Ruth Markart, heard the matter both initially and on remand.

A second hearing was held on April 7, 2009. (R 235). Thompson testified at the hearing, as did Wendy Klamm, vocational expert, and Dr. George Smith, medical expert. (R 235). Thompson was represented by counsel.

In the Decision rendered after rehearing, the ALJ found Thompson had not engaged in substantial gainful activity since the alleged disability onset date of January 1, 2003. (R 197). At the second step the ALJ found Thompson had a severe impairment of cervical disc disease. (R 197). At the third step, the ALJ found Thompson's impairments did not meet or equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, specifically Listing 1.04. (R 198). The ALJ then assessed Thompson's residual functional capacity and found as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except The [sic] claimant is able to lift and carry ten pounds occasionally, stand and walk six hours in a workday and sit six hours in a workday, with the ability to push and pull limited by the weight she is able to lift and carry. She is not able to climb ladders, ropes or scaffolds, but is able to climb ramps/stairs, balance, stoop, kneel, crouch and crawl on an occasional basis. She is able to reach overhead on an occasional basis only and is not able to look up or down frequently.

2

(R 198).

At the fourth step the ALJ found she could not perform her past relevant work as a certified nurse's assistant.  (R 210).  At the fifth step, with the assistance of vocational expert testimony, the ALJ found Thompson could perform the representative occupations of check cashier, telephone solicitor and a telephone operator.  (R 202).  As a result, the ALJ determined Thompson had not been under any disability, as defined in the Social Security Act, from January 1, 2003, through the date of the Decision on April 23, 2009. (R 203).  The appeals council denied review.  (R 188).  This appeal followed.

### *Assignment of Errors*

In her brief, claimant argues the ALJ erroneously discounted the claimant's credibility regarding the side effects of her medication by mischaracterizing the testimony of the medical expert and in relying on the absence of documented complaints of side-effects in her medical records.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards.  Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245

(5th Cir. 1991).  The court may not reweigh the evidence in the record, nor substitute its

judgment for that of the Commissioner, even if the preponderance of the evidence does

not support the Commissioner's conclusion.  Carey, 230 F.3d at 136; Johnson v. Bowen ,

864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate

only if no credible evidentiary choices or medical findings exist to support the decision.

Johnson, 864 F.2d at 343.

Under the first four steps of the sequential analysis,[1] the burden lies with the

claimant to prove disability. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). The

inquiry terminates if the Commissioner determines at any point during the first four steps

that the claimant is disabled or is not disabled. Id. Once the claimant satisfies his or her

---

[1]   In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1.   If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2.   A person who does not have a "severe impairment" will not be found to be disabled.

3.   A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4.   If a person can still perform his past work, he is not disabled.

5.   If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1304 (5th Cir.1987). The burden of proof then returns to the claimant to rebut the Commissioner's showing. <u>Masterson v. Barnhart</u>, 309 F.3d 267, 272 (5th Cir.2002). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. <u>Lovelace v. Bowen</u>, 813 F.2d 55, 58 (5th Cir.1987).

### *Discussion*

This matter was remanded to the ALJ for consideration of the side-effects of claimant's pain medications in the disability analysis.[2]  The ALJ expressly evaluated same in her Decision, as follows:

> In addition to the limitations arising from the neck impairment itself, the undersigned must consider any impact the claimant's pain medication may have on her ability to perform work activity on a sustained full-time basis. The claimant testified she is not able to work eight hours per day because the pain medication she takes leaves her too sleepy to work. The medical expert at the hearing testified that the side effects of pain medication are very individual to each patient, but that the dosage of Lortab taken by the claimant is relatively low. He testified that he would not expect the dosages taken by the claimant to preclude sustained work activity. Dr. Smith further

---

[2]The medications taken by the claimant as of February 13, 2009, were Flexeril, Lortab, Neurontin, and Ultram.  (R 234, 248).

stated that if a patient tells him that a particular pain medication causes excessive sleepiness, he would change the medication to try to avoid the side effect.

A careful review of the medical records fails to corroborate the claimant's report of disabling sleepiness as a side of effect of Lortab, as the medical evidence does not document a single complaint of a side effect of medication. When there is a significant difference between the claimant's testimony as to the side effects of medication and evidence in the medical records, a question is raised as to the credibility of the report of side effects. Why would the claimant give a more accurate description of allegedly disability side effects to the judge than to her treating physician? The Administrative Law Judge has no other medication to offer to reduce any side effects, whereas the doctors may. The absence of any report of side effects of Lortab leaves the undersigned to doubt that any such side effects would leave the claimant completely unable to work.

It is also significant that the claimant was consistently described as awake, alert and fully oriented upon examination by treating sources at UMC. At no point was she noted to be sleepy, disoriented, drowsy or adversely affected by medication in any way. The absence of any such notation suggests that the claimant's side effects are not so extreme as to be completely disabling.

(R 199, 200).

Social Security Ruling 96-7p and regulations at 20 CFR 404.1529(c) and 416.929(c) specifically state that in assessing a claimant's credibility, the ALJ must consider "the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "treatment, other than medication, the individual receives or has received for relief of pain or other symptoms." An accurate factual representation regarding medication and other treatment a claimant receives or has received is essential in determining the credibility of claimant's allegations of pain or other symptoms. Thus, the Fifth Circuit has held that a credibility

6

choice based upon a misinterpretation of medical records requires reversal and remand. See Olson v. Schweiker, 663 F.2d 593, 596 (5th Cir. 1981).

The claimant's argument on appeal appears to be that the ALJ's credibility determination was erroneous because she "misinterpreted medical records;" that is, she misconstrued the testimony of the medical expert and the public health care facilities do not create thorough and reliable records.

The undersigned has reviewed the testimony of Dr. Smith and does not find any mischaracterization of same by the ALJ.  When asked about the side effects of her medications, Dr. Smith testified, as recognized by the ALJ, that while Thompson was "not taking that much" that she would "no doubt. . .have some drowsiness" and the amount of drowsiness would be "an individual thing." (R 260).   Dr. Smith also testified that if he were prescribing a patient the medications Thompson was taking, he would "probably not" say he or she would be unable to work because of the side effects, but qualified his answer with "I'd have to see how it affected her."  (R 260).  Dr. Smith's exact testimony was follows:

> I, I guess my answer would be, I'd have to see how it affected her.
> Probably not, but you know, people, as I said, people react differently to
> drugs.  Some have a lot more side-effects than others, and so if a patient
> were to tell me that it really made them very drowsy, I might try to change
> the medication, but you know, I'm in no position to tell them that they
> didn't experience that.

(R 260).

The ALJ characterized Dr. Smith's testimony as follows:

7

> The medical expert at the hearing testified that the side effects of pain medication are very individual to each patient, but that the dosage of Lortab taken by the claimant is relatively low.  He testified that he would not expect the dosages taken by the claimant to preclude sustained work activity. Dr. Smith further stated that if a patient tells him that a particular pain medication causes excessive sleepiness, he would change the medication to try to avoid the side effect.

(R 200).

The undersigned finds this a fair summary and characterization of the medical expert's testimony, quoted above, and claimant's argument that the ALJ misconstrued the expert's testimony is without merit.

In addition to expert testimony, the ALJ relied on Thompson's medical records to discount her complaints regarding the severity of the side-effects of her medications, noting the records did not reflect any complaints of drowsiness or other side-effects. Thompson complains this is "unfair" because the physicians ignored her complaints and therefore didn't write them in the charts and "[a] review of Ms. Thompson's UMC records reveals minimal information supplied by her physician with respect to the medical examinations."[3]

The undersigned finds no error in the ALJ's use of Thompson's medical records in weighing the credibility of her complaints and the undersigned has been pointed to no erroneous interpretation of her medical records.  While the undersigned agrees that in many cases medical records from UMC are very uninformative and barely legible, the undersigned does not find in this case the UMC records "minimal" as argued by claimant.

---

[3]*Plaintiff's Brief in Support of Social Security Disability Appeal* (Rec. Doc. 8), p. 4.

In any case, Thompson did not complain about any side effects of medication to Dr. Eze, the DDS examining physician, who provided a thorough and legible narrative in his Consultative Examination.  (R 135).

The undersigned finds the ALJ's interpretation of the medical expert's testimony and use of Thompson's medical records were not erroneous.  The ALJ properly considered the side-effects of Thompson's medications on her ability to sustain gainful employment, although she found Thompson's testimony regarding their severity incredible, which was within her discretion.  Credibility determinations are the province of the ALJ, not the courts – "We do not sit in *de novo*  review nor may we re-weigh the evidence."  Falco v. Shalala, 27 F.3d 160, 164, n. 18 (5th Cir. 1994), referencing Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).   Therefore, this sole assignment of error is without merit.

### *Conclusion and Recommendation*

The undersigned finds the ALJ properly considered the side-effects of claimant's medications on her ability to sustain gainful employment.  There was no error in her interpretation of the medical expert's testimony or in her use or interpretation of claimant's medical records.  A review of the entire disability analysis supports a finding that the ALJ's Decision was reached by application of the proper legal standards and is supported by substantial evidence of record.  Therefore, for the reasons given above,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the

Commissioner be **AFFIRMED** and this matter **DISMISSED.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

Signed in Lafayette, Louisiana, this 9th day of March, 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)